UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VANESSA COLEMAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: 09-0050 (RCL/DAR) |
| | : | |
| DISTRICT OF COLUMBIA, *et. al*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT DISTRICT OF COLUMBIA AND BRIAN LEE'S
REPLY TO PLAINTIFF'S OPPOSITION TO THE DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

The Defendants District of Columbia and Brian Lee, by and through counsel,

respectfully reply to the Plaintiff's Opposition to Defendants' Motion for Judgment on

the Pleadings for Plaintiff's Constitutional Claims (hereinafter "Plaintiff's Opposition" or

"Pl. Opp.") [Docket No. 94].  The Defendants' Motion demonstrated the District is

entitled to judgment in the its favor on each of Plaintiff's constitutional claims and for

Plaintiff's common law claim of Negligent Hiring and Supervision; the Defendants'

Motion also demonstrated that Defendant Lee is entitled to judgment in his favor on

Plaintiff's Fourth and Fifth Amendment constitutional claims and for Plaintiff's common

law claim of Negligent Hiring and Supervision.  As demonstrated below, nothing in

Plaintiff's Opposition warrants a different conclusion.

**I.      The District and Brian Lee are Entitled to Judgment on Plaintiff's Claims for
        Fourth Amendment Violations**

In their Motion, the Defendants demonstrated that they are entitled to judgment

on Plaintiff's claims for Fourth Amendment violation because Plaintiff's directive to

undergo a psychological exam does not constitute a search for the purposes of Fourth

Amendment.  *See* Def. Mem. at 3-5.  In her Opposition, Plaintiff cites no case that stands

for the proposition that a psychological examination conducted in the context of

employment constitutes a Fourth Amendment violation.  *See* Pl. Opp., *passim.*  Instead,

Plaintiff attempts to distinguish *Greenwalt*, disingenuously characterizing the

psychological exam to which Greenwalt was subject to as "mere questioning."  *See* Pl.

Opp. at 8.  To the contrary, the *Greenwalt* decision noted that the exam "lasted two hours

and inquired into details of [plaintiff's] personal life."  *Greenwalt*  at 588.  Further, the

Court in *Greenwalt* considered that, "according to the complaint, 'the battery of

psychological tests examined Ms. Greenawalt's personality traits, psychological

adjustments and health-related issues.'"  *Id.* at 590.  Like Plaintiff here, Greenwalt was

required to have the examination, or suffer consequences at her job, including

termination.  *Id.*  Simply put, Plaintiff cites no meaningful distinction between her

circumstances and those in *Greenwalt.*

       The Defendants further demonstrated that even if a psychological examination

could amount to a search for Fourth Amendment purposes, Plaintiff suffered no Fourth

Amendment violation.  *Id.*   In her Opposition, Plaintiff fails to address the framework for

Fourth Amendment analysis which applies to drug testing in the employment context.

Rather, Plaintiff argues that there is "no 'clear, direct' and lawful nexus between

Coleman's protected activities and Defendants' response ordering her to submit to a

psychological evaluation."  Pl. Opp. at 9.  Plaintiff's poorly veiled attempt to reframe the

issue before the Court does nothing to advance her argument.

       This Circuit has recognized that a government may search its employees when a

clear, direct nexus exists *between the nature of the employee's duty and the nature of the*

*feared violation. Harmon v. Thornburgh,* 878 F.2d 484 (D.C. Cir. 1988), see also *Willner*

*v. Thornbough,* 928 F2d 1185, 1188 (D.C. Cir. 1991) and *see Transport Institute v. U.S.*

*Coast Guard,* 1989 OSHD P28, 627, (D.D.C. 1989)(finding that maritime workers'

privacy interests are reduced due to the widespread use of physical examinations and

drug testing as standard practices in the industry)**.**

These cases follow the well established body of case law concerning drug testing

which, while an imperfect comparison, provides some framework for analysis of

Plaintiff's Fourth Amendment claims.  In *Skinner v. Railway Labor Executives' Assn.*,

489 U.S. 602, 616-618 (1989), the Supreme Court held that federal regulations requiring

private employees of private railroads to produce urine samples for analysis implicates

the Fourth Amendment but does not violate it.  The Court explained that in an industry

such as the railroad:

> the expectations of privacy of covered employees are diminished by
> reason of their participation in an industry that is regulated pervasively to
> ensure safety, a goal dependent in substantial part, on the health and
> fitness of covered employees.

*Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 627 (1989).  In contrast,

the government's interest in testing without a showing of individualized suspicion is

compelling:  employees subject to the tests discharge duties fraught with such risks of

injury to others that even a momentary lapse of attention can have disastrous

consequences.  *Id.* at 628.

The Third Circuit has applied the *Skinner* framework to drug testing of fire

fighters, and held that drug testing of firefighters does not constitute a Fourth

Amendment violation.  *Wilcher v. City of Wilmington,* 139 F.3d 366, 370 (3rd Cir. 1998).

In *Wilcher*, the Court of Appeals for the Third Circuit considered whether the City's

method of testing firefighters for drug use – which specifically included visual observation of the firefighters while they provide their samples – constituted an unreasonable Fourth Amendment search.  *Id.*  The Third Circuit affirmed the district court's assessment that firefighters enjoy only a diminished expectation of privacy, "'[*b*]*ecause they are in a highly regulated industry and their duties involve safety concerns of which the firefighters are well aware*.'"  *Id.* at 374-75.  The Court cited the fact that the government interest in ensuring public safety posed a significant concern; "a firefighter whose drug use is undetected is a source of danger to himself, his colleagues, and to the community at large."  *Id.* at 375.

Thus, like the employees in *Skinner* and *Wilcher,* it is Plaintiff's employment as a firefighter, in an industry so closely involved in the safety of others that diminishes her expectation of privacy.  Thus, as demonstrated above and in the Defendants' Motion, the District and Brian Lee are entitled to judgment on Plaintiff's Fourth Amendment claims as Plaintiff's directive to undergo a psychological exam does not constitute a search for the purposes of Fourth Amendment.  However, assuming *arguendo*, that a psychological examination in the employment context does implicate the Fourth Amendment, the search was reasonable in light of Plaintiff's limited privacy expectations in the nature of the industry.

## II.     The District and Brian Lee are Entitled to Judgment on Plaintiff's Claims for Fifth Amendment Violations

In their Motion, the Defendants demonstrated that (1) Plaintiff has failed to exhaust her administrative remedies; (2) the alleged deficiencies in a pre-termination hearing cannot create a Fifth Amendment claim; and (3) any alleged deviation from

municipal regulations cannot create a Fifth Amendment claim.  *See* Def. Mem. at 6-10.
Nothing in Plaintiff's Opposition warrants a different conclusion.

### A.        Plaintiff failed to Exhaust Administrative Remedies

In their Motion, the Defendants demonstrated that Plaintiff's failure to avail
herself of administrative remedies precludes her due process claim.  *See* Def. Mem. at 6-
7.  In her Opposition, with regard to her termination, Plaintiff wrongfully asserts that she
is not required to exhaust administrative remedies.  In support of this argument, Plaintiff
cites *Johnson v. District of Columbia,* 552 F.3d 806 (D.C. Cir. 2008)  and *Johnsons'*
reliance, in part, on *Thompson v. District of Columbia*, 428 F.3d 283 (D.C. Cir. 2005).
*See* Pl. Opp. at 13.

Plaintiff asserts that in *Thompson* , the Court of Appeals "reversed the district
court's decision dismissing the plaintiff's procedural due process claims because of his
failure to avail himself of the right to appeal his termination."  Pl. Opp. at 13.  However,
Plaintiff failed to mention that in *Thompson*, the plaintiff's employment was terminated
*without a pretermination hearing.  Thompson* at 287.  Hence, the issue before the Court
was "whether the [employer] had a governmental interest that justified depriving
Thompson of a pre-termination hearing…"  *Id.* at 287-88.   Thus, *Thompson v. District of
Columbia* is wholly inapplicable to the case at issue.  Although Plaintiff here takes issue
with the purported deficiencies in the hearing, Plaintiff cannot deny that she was, in fact,
afforded a pre-termination hearing.  *See* Pl. Third Am. Compl. at ¶ 54 ("On June 2, 3, 24,
and July 10 and 15, 2009, Plaintiff appeared before a FEMS Fire Trial Board in response
to the charges initiated against her by Defendant Lee.")

Secondly, with regard to the termination of her employment, Plaintiff makes the remarkable assertion that "with respect to her termination, Plaintiff *has* exhausted all available remedies available to her.*" See* Pl. Opp. at 13 (emphasis added).  Notably, however, Plaintiff does not assert in her Opposition, nor does she allege in her Third Amended Complaint that she appealed the termination of her employment to the Office of the Employee Appeals ("OEA") or followed the negotiated procedures for appeal in a CBA pursuant to D.C. Code § 1-601.01, *et seq.  See* Pl. Opp., *passim* and *see* Pl. Third Am. Compl., *passim.*  Thus, Plaintiff's assertion is not supported by any factual allegations in her complaint.

Finally, Plaintiff confusingly asserts that the Whistleblower Protection Act (WPA) does not require exhaustion and allows an employee to appeal to the OEA or directly to the D.C. Superior Court.  *See* Pl. Opp. at 14.  The Defendants presented no argument to the contrary in its Motion nor did the Defendants move for judgment on Plaintiff's WPA claims.  *See* Defs. Mot., *generally.*  Certainly, Plaintiff cannot reasonably contend that the WPA, which allows for direct appeal to the D.C. Superior Court somehow confers upon Plaintiff the right to proceed directly to federal court for her constitutional claims.

### B.       Alleged Deficiencies in a Pre-Termination Hearing Cannot Create a Fifth Amendment Violation Claim

As demonstrated in the Defendants' Motion, alleged deficiencies in Plaintiff's pre-termination hearing cannot create a due process violation.  *See* Def. Mem. at 7-9.  In her Opposition, Plaintiff wrongly persists in her argument that "various procedural deficiencies and improper conduct during the Trial Board proceedings prior to her termination resulted in the denial of her procedural due process rights."  *See* Pl. Opp. at

12.

### 1. Notice

First, Plaintiff conflates her arguments concerning the alleged deficiencies in the
pre-termination Trial Board hearing with the requirements dictated by the Due Process
Clause.  Specifically, Plaintiff argues that she "also pled facts that she did not receive
timely and proper notification concerning the charges that were brought against her for
the July 31st and August 7, 2008 orders to appear at the PFC…"  *See* Pl. Opp. at 94.
However, as demonstrated in the Defendants' Motion, when protected interests are
implicated, the Constitution requires "notice and opportunity for hearing appropriate to
the nature of the case."  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985).
The notice must be "reasonably calculated, under all the circumstances, to apprise
interested parties of the pendency of the action and afford them an opportunity to present
their objections."  *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70
S.Ct. 652, 657, 94 L.Ed. 865 (1950).

On the face of her Third Amended Complaint, Plaintiff received sufficient notice
to satisfy Due Process:

> 38.  On January 13, 2009, Defendant Lee issued formal charges against
> the Plaintiff for challenging the orders to submit to a fitness for duty
> evaluation, including a psychological evaluation.  Plaintiff was advised in
> the charges that she faced possible termination.
> …
>
> 54.  On June 2, 3, 24, and July 10 and 15, 2009, Plaintiff appeared before a
> FEMS Fire Trial Board in response to the charges initiated against her by
> Defendant Lee.

*See* Third Am. Compl. at ¶¶ 38, 54.  Given the allegations in Paragraph 38 of her Third Amended Complaint, Plaintiff's contention that she did not receive adequate notice is baseless.

### 2.   Substance of the hearing

Plaintiff further conflates the alleged procedural deficiencies in the Trial Board hearing with procedural requirements necessary to satisfy Due Process.  Specifically, Plaintiff attempts to distinguish her case from *Duchesne;* in so doing, she underscores the District's argument.  *See* Pl. Opp. at 16-17.  In *Duchesne*, the plaintiff was informed by the City Manager that his employment would be terminated for several reasons including the fact that he had "impugned the City Manager."  *Id.* at 1005.  After receiving notice of his termination, the plaintiff in *Duchesne* filed a lawsuit against the City Manager (and the city) alleging both federal and state claims.  *Id.*  Shortly thereafter, a pre-termination hearing was held concerning plaintiff's employment.  *Id.*  During the hearing, the *Duchesne* plaintiff  was represented by counsel, allowed to present witnesses and was allowed to cross examine the city's witnesses.  *Id.*  His hearing took place over several days.  The City Manager, against whom plaintiff had filed suit, presided over the hearing and was also a witness in the hearing.  *Id.*  Ultimately, the City Manager affirmed the plaintiff's discharge.  *Id.*

Like the plaintiff in *Duchesne,* Plaintiff here was afforded an extensive pre-termination hearing which took place over the course of several days.  *See* Third Am. Compl. at ¶ 54.  Also like the plaintiff in Duchesne, Plaintiff here was represented by counsel.  *Id.*  Although she takes issue with the amount and type, Plaintiff had the opportunity to present evidence and testimony in her own defense.  *Id.*

Plaintiff argues that Defendant Lee's involvement in Plaintiff's order to submit for a fitness for duty examination, initiation of the charges against Plaintiff and purported "control" over the Trial Board precludes the application of *Duchesne.*  *See* Pl. Opp. at 16-18.  Plaintiff's argument has no merit.

First, Plaintiff asserts that Defendant Lee's position allowed him to influence the Trial Board's decision in a number of ways.  *See* Pl. Opp. at 17.  While the Defendants deny such allegations, in light of *Duchesne v. Williams,* the allegations even if taken as true, are of no consequence.  In *Duchesne,* the ultimate and only decisionmaker in the pre-termination hearing was involved in the charges leading up to the hearing.  849 F.2d 1004, 1005 (6th Cir. 1988).  Likewise, in *Duchesne*, the allegedly biased decisionmaker was directly responsible for the hearing decision.  *Id.*  Here, Plaintiff's complaint is that Defendant Lee gave the alleged illegal order, drew up the charges and was responsible for the hearing decision, albeit through his oversight of the Office of Compliance.  Moreover, like Plaintiff here who had filed suit against Defendant Lee, at the time of Duchesne's hearing, Duchesne had filed a lawsuit against the City Manager who presided over the hearing.  *Id.*  Thus, *Duchesne* is indistinguishable from the case at bar.

Next, faced with caselaw precluding her claims of due process based on the alleged "legal and procedural deficiencies" of the Trial Board hearing, Plaintiff contends in her Opposition that she "has pled sufficient facts to show the Trial Board proceedings initiated against her were biased *and premeditated." See* Pl. Opp. at 18.  Despite Plaintiff's argument however, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)

(citing *Twombly,* 550 U.S. at 556).  This facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).

Here, despite her allegations concerning Defendant Lee's purported influence over the Trial Board hearing, discussed above, Plaintiff's Third Amended Complaint provides no factual allegations to support an inference that the hearing was a sham.  In contrast, as discussed in detail above, Plaintiff was afforded an extensive pre-termination hearing which took place over five days.  *See* Third Am. Compl. at ¶ 54.  During the hearing she was represented by counsel and afforded an opportunity to present her own evidence and testimony.  *Id.*  The hearing concluded with a finding of not guilty on one of the three charges brought against her.  *See id.* at ¶ 63.  These allegations demonstrate that Plaintiff's post hoc allegation of predetermination cannot stand.

### C. Alleged Deviation from the D.C. Municipal Regulations Cannot Create a Fifth Amendment Violation Claim

As demonstrated in the Defendants' Motion, Defendants' alleged violations of their own personnel regulations cannot establish a deprivation of constitutional due process.  *See Brandon v. District of Columbia*, 823 F.2d 644, 649 (D.C. Cir. 1987).  *See* Def. Mem. at 9-10.  In her Opposition, Plaintiff seeks to rely on *Wolff. v. McDonnel*, 418 U.S. 539 (1974) for the proposition that an alleged deviation from municipal regulations in this case constitutes a due process violation.  However,  the limited holding in *Wolff*, even if it had application to the instant case, was later explained by the Supreme Court in *Sandin v. Conner* 515 U.S. 472, 115 S.Ct. 2293 (1995):

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum*.  Following *Wolff,* we recognize that States may under certain circumstances create liberty

> interests which are protected by the Due Process Clause. *See* also *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, *see, e.g., Vitek,* 445 U.S., at 493, 100 S. Ct., at 1263-1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221-222, 110 S.Ct., at 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*(internal citations omitted).*  Even assuming that such liberty interests could be created by statute in the employment context, the Court in *Sandin* directed courts to focus on the "nature of the deprivation" rather than "the language of particular regulation." 515 U.S. 472, 481 (1995); *see also Hatch v. District of Columbia*, 184 F.3d 846 (D.C. Cir. 1999).

Here, Plaintiff contends that she had "retained a liberty interest *by virtue of the regulations entitling her* to be free from a psychological assessment absent a medical evaluation first…" *See* Pl. Opp. at 20 (emphasis added).  Plaintiff attempts to do precisely what the Supreme Court has advised against:  define the purported interest by the 'language of a particular regulation." 515 U.S. 472, 481 (1995).  Notably, Plaintiff cites to no case which stands for the proposition that she has a purported liberty interest in not undergoing a psychological evaluation in connection with her employment.  *See also* Section I, *supra.*

### III.    Plaintiff Cannot Establish Municipal Liability Under 42 U.S.C. § 1983 on her First, Fourth or Fifth Amendment Claims

As demonstrated in the Defendants' Motion, the District is entitled to judgment on the pleadings as to plaintiff's constitutional claims because Plaintiff has failed to

sufficiently plead municipal liability.  *See* Def. Mem. at 11-19.  Plaintiff's arguments

cannot refute this conclusion.

### A.  Plaintiff Has Not Alleged Sufficient Facts for Municipal Liability Based on the Actions of a Policymaker within the Government.

In her Opposition, Plaintiff wrongly argues that her theory of municipal liability

based on the actions of a final policymaker within the government is sufficiently

supported by the actions of Defendant Lee or Chief Rubin.  *See* Pl. Opp. at 21.

Plaintiff argues that Chief Rubin is a final policy maker within the government.

Pl. Opp. 22-24.   However, in light of this Court's prior decisions, it is unclear what

action(s) taken by former Chief Rubin establishes municipal liability.   In her Oppositon,

Plaintiff fails to argue any specific action of former Chief Rubin for which she seeks to

hold the District liable.  Without discussion of the "significant role played by former

Chief Rubin," Plaintiff directs the Court to her Third Amended Complaint paragraphs 8,

19-20, 22, 24, 62-68 for allegations supporting her contention that the District can be held

liable on a final policymaker decision theory of municipal liability.  *See* Pl. Opp. at 22.

Paragraph 8 upon which Plaintiff wrongfully relies[1] was stricken in its entirety from

Plaintiff's Third Amended Complaint by the Court's September 9, 2011 Order.

Second, to the extent that Plaintiff seeks to rely on former Chief Rubin's

purported involvement in her termination and fitness for duty examination, Plaintiff's

claims do not "plausibly give rise to an entitlement to relief" under Section 1983.  *See*

---

[1] Paragraph 8 reads as follows:

The Defendant Dennis Rubin is the Chief of the District of Columbia's Fire and Emergency Medical Services Department. He is named as a party to this action in his official capacity for the purpose of implementing injunctive relief. Defendant Rubin is the head of the Department and final agency decision maker. As Chief, Defendant Rubin is a policymaker with authority over personnel, policy, operations, training, and all other matters concerning the running of the Fire and EMS Department. He is also named as a party to this action because of his direct involvement in the implementation of disciplinary actions against Plaintiff, including the decision to terminate Plaintiff's employment with the FEMS.

*Iqbal*, 129 S.Ct. at 1949-50.   In her Third Amended Complaint, Plaintiff asserts that Chief Rubin elected to alter the recommended decision of the Fire Trial Board by increasing the level of demotion and imposing the requirement that Plaintiff complete the fitness for duty examination where the Trial Board imposed no such requirement.  *See* Third Am. Compl. ¶¶ 62-67.  This allegations were previously addressed by this Court when it considered Plaintiff's Motion for Leave to amend her complaint.  *See* Mem. Op. and Order dated January 14, 2010.  The Court found that "Chief Rubin by no means exceeded the Fire Trial Board's recommendation regarding Coleman's demotion" and that "Chief Rubin's decision letter indicating that Plaintiff must submit to a fitness for duty examination, which included a psychological evaluation, did not exceed the Trial Board's recommendation."  *Id.* at p. 4.  Finally, the Court concluded that it is "not required to accept Coleman's conclusions and inferences regarding Chief Rubin's alleged improper activities in his individual capacity if there is no support for them."  *Id.*

Just as the Court was not required to accept Plaintiff's conclusions and inferences regarding Chief Rubin in support of an individual capacity suit against him, the Court should not consider the same conclusory and unsupported allegations and inferences in purported support of a theory of municipal liability based on the actions of a final decision maker.  Thus, Plaintiff's allegations regarding Chief Rubin cannot sustain a claim of municipal liability based on the actions of a final policy maker.

With regard to Defendant Lee, Plaintiff asserts that the "defendants do deny that Assistant Chief Brian Lee is a policymaker."  *See* Pl. Opp. at 22.  To be sure, the Defendants' Motion demonstrated that Defendant Lee is not a final policy maker for the sake of *Monell* liability.  *See* Def. Mem. at 12-14.  First, since Plaintiff's Third Amended

Complaint acknowledges the level of review or decision-making above Defendant Lee,

Plaintiff essentially concedes that Lee is not "responsible for establishing *final*

government policy respecting such activity" and therefore the District cannot be held

liable on this theory based on the actions of Defendant Lee.  *Monell*, 475 U.S. at  482-83

(emphasis added).   Plaintiff failed to address this argument in her Opposition.

Further, in support of her contention that Defendant Lee is a "policymaker"

Plaintiff points to *discretionary* decisions by Defendant Lee which do not establish final

policy making authority.  *See e.g.* Pl. Opp. at 22 (citing Lee's purported authority to

"order Coleman to submit to a psychological evaluation" and put the same order on

"hold" as well as issue formal charges against Coleman).  However, "a municipality is

not 'liable under § 1983 when the official responsible for the alleged constitutional

deprivation … possessed only the authority to make employment *decisions* (i.e.

transferring or terminating an agency employee), *not* the authority to set employment

*policy* for the City."  *Fox v. District of Columbia*, 990 F. Supp. 13, 20 (D.D.C. 1997))

(emphasis in original).   Further, although Plaintiff alleges that Defendant Lee "presides"

over the Trial Board, she presents no argument how this, even if accepted as true, would

indicate anything beyond the "authority to make employment decisions."  *See id.*

Finally, relying on *Steinberg v. Gray,* 2011 U.S. Dist LEXIS 112325, *14-15

(D.D.C. 2011) Plaintiff asserts that at this stage she "is only required to plead the policy

maker element and not required to prove it."  Pl. Opp. at 24.  While there is no question

that Plaintiff need not prove her claims at the pleadings stag, however, *Iqbal* "demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v.*

*Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.

544, 555 (2007)).  Thus, Plaintiff's reliance on *Steinberg v. Gray,* 2011 U.S. Dist LEXIS

112325, *14-15 (D.D.C. 2011) which relies, in turn, on *Atchinson v. District of*

*Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996) is misplaced.

In *Robertson v. District of Columbia,* 2011 WL 3238996, Slip. Op. (D.D.C.

August 16, 2010),  Judge Urbina explained the plaintiff's reliance on *Atchinson* in

support of her argument that she had sufficiently plead a deliberate indifference theory of

municipal liability was insufficient to overcome a motion to dismiss:

> Relying on *Atchinson*, the plaintiff asserts that she has stated a § 1983
> claim against the District, noting that she has alleged an instance of
> misconduct, inadequate training and "deliberate indifference" on the part
> of the District. [internal citations omitted].  Yet the portion of *Atchinson*
> holding that a plaintiff adequately pleads "deliberate indifference" simply
> by invoking the phrase in his or her complaint appears to have been
> superseded by the Supreme Court's ruling in *Ashcroft v. Iqbal.* […] The
> Supreme Court noted that to succeed on his claim, the plaintiff was
> required to plead and prove that the defendants acted "with discriminatory
> purpose." *Id.* at 1948.  Furthermore, the Court noted that to state a claim
> against the defendants, that "**the complaint must contain *facts* plausibly
> showing that petitioners purposefully adopted a policy of classifying
> post-September-11 detainees as 'of high interest' because of the race,
> religion, or national origin." *Id.* at 1953 (emphasis added).**  Because
> the complaint was devoid of facts suggesting that the defendants
> implemented the detention policies at issue based on an impermissible
> motive, the Court held that the complaint failed to state a claim for which
> relief could be granted. *Id.* at 1953-54 (observing that allegations of
> mental state cannot be alleged as a conclusion but must be supported by
> sufficient factual content).

*Robertson v. District of Columbia,* 2010 WL 3238996, *7, Slip. Op. (D.D.C. August 16,

2010)(emphasis added).  Like the plaintiff in *Robertson*, Plaintiff's reliance on *Atchinson*

is misplaced.  Pursuant to *Iqbal*, Plaintiff cannot rely on "[a] pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action…'" *Iqbal*

at 1949 (quoting *Twombly*, 550 U.S. at 555).

**B.  Plaintiff has not alleged facts in support of municipal liability based on "the explicit setting of a policy by the government that violates the Constitution."**

In the Defendants' Motion, the Defendants demonstrated that Plaintiff fails to identify any *explicit* policy by the District that she alleges violates the constitution.  *See* Pl. Third Am. Compl.*, passim.* In response to this argument, Plaintiff repeats allegations in support of her theory of municipal liability pursuant to an alleged custom or practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970).   These allegations are discussed below.  Nonetheless, Plaintiff cannot rely on an "explicit policy" which violates the constitution in support of her *Monell* claim against the District.

**C.  Plaintiff has not alleged sufficient facts for municipal liability based on the "knowing failure to act by a policy maker to actions by his subordinates that are so consistent they have become a custom."**

As demonstrated in the Defendants' Motion, the Defendants are entitled to judgment because Plaintiff has not plead facts sufficient to support a plausible inference that an alleged custom or practice of the District, "so permanent and well settled as to constitute a 'custom or usage' with the force of law" was the moving force behind her alleged Constitutional violations.  *See* Def. Mem. at 12-14, citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970), et al.   In her brief, Plaintiff takes issue with the Defendants' reference and discussion of *Carter v. District of Columbia* to demonstrate Plaintiff's ultimate burden to demonstrate municipal liability under § 1983 pursuant to a custom or practice theory of municipal liability.  *See* Pl.  Opp. at 27-28.  To be certain, the pleading requirements as set forth in the Defendants' brief are governed by *Iqbal* which, *inter alia,* requires that to survive a motion to dismiss a complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly,* 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly,* 550 U.S. at 556).  Further, this facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).

 *Carter* defines and discusses municipal liability pursuant to 'custom and practice' theory and is referred to by the Defendants for the same. The *Iqbal* standard which asks if a complaint "allows the court to draw the reasonable inference that the defendant is liable…" has no application without an indication of what is ultimately required to be proven under a particular theory of liability.  Plaintiff's attempt to argue that the Defendants somehow seek to impose a standard other than that required by *Iqbal* is a red herring and warrants no consideration by the Court.

 In light of the above standards, and the application of *Iqbal*, the Defendants' Motion demonstrated that Plaintiff's mere allegations concerning Pennington, Bowyer and Sullivan, even if taken as true, do not amount to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).  Further, in the Defendant's Motion, the Defendants demonstrated that Plaintiff's allegations concerning Sonya Lesesne do not support Plaintiff's "custom and practice" theory of liability for violation of the Fourth and Fifth Amendment.  *See* Def. Mem. at 15-17.   The Defendants demonstrated that Plaintiff's assertions concerning Lesane present no plausible

allegations demonstrating that Lesane suffered any violation of her constitutional rights.[2]

Plaintiff's Opposition wholly fails to address these arguments.

Rather, Plaintiff merely repeats her allegations concerning Lesane. Significantly,

Plaintiff fails to identify a constitutional right of Lesane's that Plaintiff contends was

violated and fails to identify what purported custom and policy was the cause of such

violation. *See* Pl. Opp. at 31. Neither the Court nor the Defendants should be required to

sift through Plaintiff's allegations to determine what claim a fact might be applicable to

and what theory of liability Plaintiff seeks to proceed upon.

### D. Plaintiff has not alleged sufficient facts for municipal liability based on deliberate indifference in the failure to respond to a need for training.

The Defendants' Motion demonstrated that Plaintiff's Third Amended Complaint

includes no allegations concerning the District's deliberate indifference to support her

theory of § 1983 municipal liability. *See* Def. Mem. at 19. Third Am. Compl., *passim.*[3]

In her Opposition, Plaintiff fails to identify the particular constitutional violation

for which she alleges the District's policymakers have been deliberately indifferent and

thus Plaintiff relies on sweeping reference to sixty nine allegations in her Third Amended

Complaint. *See* Pl. Opp. at 34 (citing Third Am. Compl. ¶¶ 8-9, 19-23, 25-28, 31-39, 54,

57-59, 62-68, 70-76, 78-87, 91-98, 101-108, 110-115). Plaintiff summarily concludes

that she has Plaintiff alleged that "policymaking officials were informed about the actions

being taken against her and were advised on the illegality of those action but took those

actions anyway." *See* Pl. Opp. at 34.

---

[2] As a threshold matter, Plaintiff has failed to state a colorable claim for a Fourth and Fifth Amendment violation, *see* Section I, *supra*, and thus can prove no municipal liability based on these alleged violations.
[3] Plaintiff includes a common law Negligent Supervision, Training and Hiring claim, See Third Am. Compl. at ¶¶ 93-98. As further demonstrated below, the District and Brian Lee are entitled to judgment on the pleadings in their favor with regard to this claim.

Within the sixty-nine allegations referred to by Plaintiff in support of her deliberate indifference theory of liability are those allegations pertaining Plaintiff's common law negligent hiring training and supervision claim.  *See* Pl. Opp. at 34 citing 3rd Compl. ¶s 8, 9, 19 – 23, 25 – 28, 31 – 39, 54, 57 – 59, 62 – 68, 70 – 76, 78 – 87, 91 – 98, 101 – 108, 110 – 115).

On their face, the allegations in Paragraphs 93-98 are precisely the type of legal conclusions that the Supreme Court rejected as insufficient in *Twombly*.   Plaintiff provides no "factual allegations" that raise her right to relief above the speculative level [.]"  *Twombly* 127 S. Ct. at 1965 (internal citations omitted).  Instead of pleading facts in support of her claim for negligent hiring, training and supervision, Plaintiff relies solely on legal conclusions concerning the same.

In *Martin v. District of Columbia,* 2010 U.S. Dist. LEXIS 65402, *9 (D.D.C. July 1, 2010), another court analyzed similar conclusory allegations of training and supervision and rejected plaintiff's attempt to include a count based on policy or training without additional facts to support the same.  In *Martin,* in support of his municipal liability claim, the plaintiff alleged:

> Defendant District of Columbia followed policies and practices that did *not require and provide adequate standards [sic] for h [sic] officers, and that did not require and provide adequate training, supervision, and discipline* of MPD officers, including Defendants Matos, and other unknown and unidentified MPD officers. Defendant District of Columbia was deliberately indifferent to the rights of persons with whom these officers would come into contact. The policies and practices of the District of Columbia thereby caused plaintiff to be deprived of his right under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable searches and seizures.

*See id* at \*9-10 (emphasis added).  The Court held that these conclusory allegations,

without more, were not enough and cited a broad line of cases in support of the same.

*See id.* (citing *e.g., Missel v. County of Monroe,* 351 Fed. Appx. 543, 546 (2d Cir. 2009)

(finding that plaintiff's municipal liability claim was properly dismissed where the

complaint did not "contain any factual allegations to support [the plaintiff's] conclusory

and speculative assertions" regarding the County's alleged failure to train the individual

defendant); *Ainsworth v. City of Tampa, No.10-293, 2010 U.S. Dist. LEXIS 54742, at

\*21-22 (M.D. Fla. June 2, 2010)* (dismissing complaint for failure to state a claim of

municipal liability where "plaintiffs provide[d] no additional factual allegation -- other

than conclusory statements as to the City's failure to train -- supporting the existence of

an unconstitutional municipal policy"); *Ottovich v. City of Fremont, No. 09-4181, 2010

U.S. Dist. LEXIS 61761, at \*11 (N.D. Cal. May 28, 2010)* ("[T]he [amended complaint]

fails to identify any deficiency in [the municipality]'s training program, let alone how any

such deficiency reflects a deliberate or conscious choice by [the municipality] or resulted

in the alleged injury to [plaintiffs].  Rather, plaintiffs' allegations are wholly conclusory,

and, consequently, insufficient to support plaintiffs' claim."); *Humphrey v. John Doe

Officer One,* No. 09-1689, 2010 U.S. Dist. LEXIS 38661, at \*9-10 (M.D. Pa. April 20,

2010) (dismissing plaintiff's claim for municipal liability for failure to "'raise a right to

relief above the speculative level'" where plaintiff alleged the legal elements of a failure-

to-train claim without supporting factual allegations (quoting *Twombly,* 550 U.S. at

555)); *Abreu v. City of New York,* 657 F. Supp. 2d 357, 360 (E.D.N.Y. 2009) (dismissing

municipal liability claim because the complaint's "conclusory, boilerplate language" that

the City "fail[ed] to adequately train, discipline, and supervise [the individual

defendants]" and "fail[ed] to promulgate and put into effect appropriate rules and regulations applicable to the duties, conduct, activities and behavior [of their employees]" was insufficient to suggest "a deliberate choice by municipal policymakers to turn a blind eye to unconstitutional conduct.")).

It is not enough for Plaintiff to allege essentially, that because she suffered injury, District employees must have been negligently hired, retained or supervised.  *See* Third Am. Compl. at ¶¶ 93-98.  Because plaintiff alleges no facts in support of her claim that the District was negligent in its retention, hiring or supervision, her theory of municipal liability cannot stand on her allegation of deliberate indifference.

## IV.     Plaintiff Has Failed To State A Claim for Negligent Hiring Retention and Supervision

The Defendants' Motion demonstrated that the Plaintiff's common law claim of negligent hiring, supervision and training must fail because it is not predicated "on common causes of action or duties otherwise imposed by the common law," and not on statutory violations.  *See* Def. Mem. at 19-20.   In her Opposition, Plaintiff contends that she has stated a clam for the common law tort of wrongful termination upon which her Negligent Hiring and Supervision claim may be based.  *See* Pl. Opp. at 35-36.

### A.     The Plaintiff Cannot State a Wrongful Discharge Claim Under the *Adams* or *Carl* Exceptions.

It is well settled in the District of Columbia that "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991).   In *Adams,* the D.C. Court of Appeals carved out a narrow exception and deliberately applied language to ensure that the *Adams* exception would remain narrowly tailored, holding that it "would permit a

fired at-will employee to sue for wrongful discharge only if the firing was 'for the sole

reason that the employee refused to perform an illegal act.'" *Id.* at 33.  The court

explained that there can be no recovery where "the plaintiff 'was not forced to choose

between risking criminal liability [and] being discharged from his livelihood.'" *Id.* at 34

(quoting *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 724 (Tex.

1990)).

　　　　　Subsequent to its decision in *Adams v. George W. Cochran & Co.*, *supra*, the

D.C. Court of Appeals stated that violations of other public policies could also be bases

for wrongful discharge suits.  *Carl v. Children's Hospital*, 702 A.2d 159, 160 (D.C.

1997).  In *Carl*, the Court of Appeals considered the lawfulness of the termination of an

employee as a result of the employee's advocacy before the District of Columbia city

council and found that such a termination was actionable as a violation of public policy.

*Id*.  In *Carl*, the D.C. Court of Appeals ruled that "the 'very narrow exception' created in

*Adams* should not be read in a manner that makes it impossible to recognize any

additional public policy exceptions to the at-will doctrine that may warrant recognition."

702 A.2d at 160.

　　　　　In *Carl*, the plaintiff claimed that she was discharged because she had testified

before the D.C. Council on proposed tort reform legislation, taking a position contrary to

the interests of her employer. 702 A.2d at 160.  While recognizing that the plaintiff's

termination could not meet the standards under the *Adams* exception, because there was

no legal violation involved in her conduct, a plurality of the *en banc* court held that her

claim should not have been dismissed.  *Id.* at 161.    The court's ruling primarily relied on

a clause in the D.C. Code that made it a crime "'to influence, intimidate, or impede any

witness in any proceeding before the Council.'" *Id.* at 165 (quoting D.C. Code § 1-224 (1981 ed.)). Several members of the Court cautioned against interpreting the Court's decision to loosely: "the recognition of any public policy exception to the at-will doctrine must be solidly based on a statute or regulation that reflects a particular public policy to be applied or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct." *Id.* at 163 (Terry, J, concurring).

Here, Plaintiff does not qualify under the *Adams* exception. While Plaintiff may allege that she was given a wrongful or "illegal" order to undergo a fitness for duty examination, she cannot reasonably contend that had she undergone the fitness for duty examination she would have been violating District laws or regulations. Thus, she was not "forced to choose between risking criminal liability [and] being discharged from [here] livelihood." *Id.* at 34 (quoting *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 724 (Tex. 1990)).

Likewise, Plaintiff's argument that she was terminated for her efforts to 'remedy" the order to submit to the fitness for duty examination and "other violations, which included correspondence with members of the D.C. City Council" do not support an exception under *Carl.  See* Pl. Opp. at 36. First, Plaintiff's failure to identify the alleged violations she purportedly attempted to "remedy" underscore the shortcomings of her pleadings. Plaintiff cannot rely on vague assertions to justify an exception pursuant to *Carl.* In addition, unlike the plaintiff in *Carl*, Plaintiff does not allege that she testified in front of the Council; nor does Plaintiff allege that she participated in "council proceedings, inquiries or investigations" as she alleges is protected by statute.  *See* Pl. Opp. at 36. Rather, Plaintiff alleges that she contacted the City Council regarding her

own personnel matters.  Third Am. Compl. at ¶ 21 ("Plaintiff sent correspondence to Mayor Fenty, members of the D.C. City Council and Chief Rubin disclosing her concerns about the retaliation and abuses she faced at FEMS.")

Moreover, Plaintiff's Third Amended Complaint falls far short of connecting her alleged wrongful termination with any purported negligent hiring, retention or supervision on the part of the District or its employees.  "Potential recovery in tort for negligent hiring or retention of an employee is not based on *respondeat superior,* but rather on proof of negligence on the part of the employer himself."  *See Schecter v. Merchs. Home Delivery, Inc.*, 892 A.2d 415, 431 (D.C. 2006).  While at this point in the proceedings, Plaintiff need not have proof of such alleged negligence, her complaint must "raise a right to relief above a speculative level."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).   In the same way that Plaintiff's allegations concerning negligent hiring, training or supervision fall short, as a matter of law, of supporting a claim for municipal liability, *see* Section II, Part D supra, the same allegations fall short of stating a claim for *respondeat superior* liability in tort.

## <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in the Defendants' Motion, the Defendants respectfully request that the Court grant the Defendants' Motion for Partial Judgment on the Pleadings.

Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

GEORGE C. VALENTINE

Deputy Attorney General, Civil Litigation Division

/s/  DARRELL CHAMBERS
DARRELL CHAMBERS [980872]
Chief, General Litigation Section 2

/s/ Juliane T. DeMarco
JULIANE T. DEMARCO [490872]
Assistant Attorney General
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
(202) 724-6646
(202) 741-0575 (fax)
E-mail: Juliane.DeMarco@dc.gov

*Counsel for the Defendant District of Columbia*